# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ROBERT MOSBY,                          )
                                       )
              Plaintiff,               )
vs.                                    )          NO.  CIV-12-1166-HE
                                       )
CUSTER COUNTY, ET AL.,                 )
                                       )
              Defendants.              )

## ORDER

Plaintiff Robert Mosby filed this action against James Covey, a County Commissioner of Custer County, Oklahoma, in his individual capacity, and against the Board of County Commissioners for Custer County ("County"), claiming he was discriminated and retaliated against because of his race.  He alleges claims for discriminatory and retaliatory discharge and a hostile work environment under Title VII of the Civil Rights Act of 1964, the Oklahoma Anti-Discrimination Act ("OADA"), and § 1983.[1]  Both Covey and the County have moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'"  Carter v. Pathfinder

---

[1]*Plaintiff alleges his rights under § 1981 and the Fourteenth Amendment were violated and brings claims for those violations under § 1983.  See Allstate Sweeping, LLC v. Black, 706 F.3d 1261, 1265 (10th Cir. 2013) (claims against municipality based on § 1981 and Equal Protection Clause must be brought under § 1983).  For clarity, those claims will generally be referred to as plaintiff's § 1983 claims.*

Energy Services, Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of

Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)).  Having considered the submissions

of the parties in light of this standard, the court concludes defendants' motions should be

granted in part and denied in part.

Background

Only a brief summary of the facts is necessary to resolve defendants' motions.[2]

Plaintiff, having previously worked for defendant Custer County, was rehired on March 16,

2009, as a road crew worker.  The following October defendant James Covey took office as

County Commissioner.  He terminated plaintiff in January 2012.

While plaintiff asserts otherwise, there is substantial evidence that he was not an ideal

employee.  Defendants have provided evidence that plaintiff was late to work, fell asleep on

the job, damaged county property and occasionally was improperly attired.[3]   Plaintiff has

denied some of defendants' assertions and countered others with proof that his coworkers

engaged in similar conduct without being disciplined.  Plaintiff also has offered evidence that

several of his coworkers repeatedly subjected him to racial slurs, sometimes in the presence

of a foreman, and that, right after he took office, Covey "sat in the room while one of his

---

[2]*Defendants filed individual motions for summary judgment and plaintiff filed one joint response.  Although defendants' arguments occasionally differ, for the most part the court refers to them jointly.*

[3]*In addition to there being evidence that plaintiff reported to work in a dirty uniform and sometimes did not wear underwear or keep his fly zipped up, plaintiff admitted being told that the company that cleaned the employees' uniforms refused to clean his because they had been turned in with feces and urine.*

workers talked about a nigger" with plaintiff present. Doc. #58-3, p. 2, depo. p. 49.[4] Plaintiff also has submitted evidence that he complained to Covey once about the disparaging language not long after Covey became Commissioner,[5] and that Covey was aware that, after he sent the employees to sensitivity training,[6] they continued to use racially discriminatory terms.[7]

Other than that one time, Covey apparently was not present with plaintiff when plaintiff's coworkers either used racially derogatory terms or directed their racial slurs at

---

[4]*Page references for briefs and exhibits are to the CM/ECF document and page number and sometimes the document or deposition page number. For example, deposition page no. 144 of Exhibit 3 to Covey's motion for summary judgment is referred to as Doc. #43-1, p. 73, depo. p. 144.*

[5]*While plaintiff testified in his deposition that he only complained to Covey once about the disparaging comments, Covey testified that "[p]robably in 2011" plaintiff complained a second time that his coworkers were "'riding [him] too hard.'" Doc. #58-6, p. 19, depo. p. 161. Covey stated that he did not know what plaintiff meant and that plaintiff never told him that his coworkers were "calling him the 'N' word." Id. at p. 20, depo. p. 162.*

[6]*The training occurred after plaintiff complained to Covey about his coworkers' racially discriminatory comments. Doc. #43-1, p. 106, depo. p. 265. The parties disagree about the subject matter of the training. Plaintiff admitted that during the training the employees were told not to discriminate against each other, Doc. #43-1, p. 12, depo. p. 58, although he did not "hear them say nothing" about not to treat people better or worse because of their skin color. Id. Other employees could not recall if the training dealt specifically with race discrimination or if they received any sort of anti-discrimination training. Doc. #58-13, p. 9, depo. p. 76; Doc. #58-24, p. 2, depo. p. 10.*

[7]*Defendants assert that, other than once in 2009, "Mosby presented no other admissible evidence that Commissioner Covey was present when racial slurs may have been used at other times by District 1 employees [Facts 43-50]. No witness has identified any time that Commissioner Covey was present and heard racial slurs being used. [Fact 50]." Doc. #43, p. 25. In making such assertions they ignore the deposition testimony of Robert Hulett, Doc. #58-4, p. 2, depo. pp. 6-8., relying on Hulett's subsequent renunciation of his prior testimony. Compare id. with Hulett Declaration, Doc. #43-11. The court must, though, give effect to Hulett's deposition testimony and not his subsequent "clarification."*

plaintiff personally.[8]  Rather, Covey allegedly heard plaintiff's coworkers make derogatory

comments about blacks or about plaintiff being a black employee in plaintiff's absence.  Doc.

#58-4., p. 2, depo. pp. 6-7.  There is no evidence that  Covey ever used a racial slur with

respect to plaintiff or any other person.

Plaintiff, who was the only black employee, has submitted some evidence of disparate

treatment.  He testified that while he was sent home for having a dirty uniform, Covey would

"jump on" the other employees about it but not send them home.  Doc. #58-3, p. 25, depo.

pp. 244-45.  Another employee testified that he and other employees showed up to work in

dirty uniforms and were neither reprimanded nor sent home.  Doc. #58-12, pp. 8-9, depo. pp.

45-46.  Plaintiff also has submitted evidence that other white employees damaged more

county equipment than he did, but they were not terminated.  Doc. #58-12, p. 10, depo. p. 53.

Plaintiff testified that the only reason Covey gave him for firing him was because he had hit

a bridge and damaged a piece of county equipment known as the "Twin Max."  He has

offered evidence that the bridge accident was not his fault and also claims it was only later,

after he was terminated, that Covey came up with other reasons for his discharge.

<u>Discussion</u>

Because plaintiff has not submitted direct evidence of discrimination, his claims are

---

[8]*One employee, Chris Kreizenbeck,  testified that "[s]ometimes" Covey was present when one of plaintiff's coworkers referred to plaintiff as a "nigger."  Doc. #58-13, p. 3, depo. p. 16. However, he later qualified his statement, stating that Covey was present in the break room when "other employees would refer to black people and the plaintiff as niggers," and he "[c]ould have" heard the remarks, but that Kreizenbeck did not "know if he heard it or not."  Id.  at p. 9, depo. pp. 74-75.  See Doc. #43-7, pp. 15-16, depo. pp. 70-71 ("I'm not saying what he heard.").*

analyzed under the <u>McDonnell Douglas</u>[9] burden-shifting framework.[10]    <u>EEOC v. Horizon/CMS Healthcare Corp.</u>, 220 F.3d 1184, 1191 (10th Cir.2000).    Under that framework, the plaintiff must first make out a prima facie case of discrimination or retaliation.  *Id.*  Once the plaintiff does so, the burden shifts to the defendants to articulate a facially nondiscriminatory or nonretaliatory reason for the adverse employment action suffered by the plaintiff.   *Id.*  At this stage of the proceeding the defendants' burden is one of production, not persuasion.  *Id.*  If the defendants sustains their burden, plaintiff "bears the ultimate burden of demonstrating that [defendants'] proffered reason is pretextual." <u>Vaughn v. Epworth Villa</u>, 537 F.3d 1147, 1150 (10th Cir. 2008) (internal quotations omitted). Despite the shifting burden of production "under the <u>McDonnell</u> <u>Douglas</u> framework, the ultimate burden of proving intentional discrimination is borne by the plaintiff." <u>Horizon/CMS</u>, 220 F.3d  at 1191-92.  For purposes of defendants' § 1983 claims, because Covey is a final policymaker for the County, his actions are attributable to the County.[11]


<u>Discriminatory discharge</u>

---

[9]<u>McDonnell Douglas Corp. v. Green</u>, *411 U.S. 792, 802–04 (1973).*

[10]*"'In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.'"* <u>Carney v. City & Cnty. of Denver</u>, *534 F.3d 1269, 1273 (10th Cir. 2008) (quoting* <u>Baca v. Sklar</u>, *398 F.3d 1210, 1218 n. 3 (10th Cir.2005)) (quotation and alterations omitted).*

[11]*Defendants do not dispute that because Covey possessed final policymaking authority his "decision[] constitute[] municipal policy for § 1983 purposes.  See* <u>Randle v. City of Aurora</u>, *69 F.3d 441, 447 (10th Cir. 1995).*

A prima facie case of discriminatory discharge requires the plaintiff to show that "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." Barlow v. C.R. England, Inc., 703 F.3d 497, 504 (10th Cir. 2012) (internal quotations omitted).   Defendants challenge the second and third elements.  They initially claim plaintiff cannot demonstrate satisfactory performance.  However, the Tenth Circuit has "long held that even in the face of alleged work rules violations 'a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, or by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she had held her position for a significant period of time.'" Mattera v. Gambro, Inc., 94 Fed. Appx. 725, 728 (10th Cir. 2004) (quoting MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir.1991)).  Plaintiff's and others' testimony that he was a good employee satisfies his burden with respect to the second element of his prima facie case.

As for the third element, plaintiff's evidence of "preferential treatment given to employees outside the protected class" suffices to link his termination to "an inference of discrimination." Barlow, 703 F.3d at 505.  He has offered evidence that he was the only employee sent home for a dirty uniform and that, while white employees also damaged country property, he was the only employee Covey terminated.

Although plaintiff has met his initial burden under the McDonnell Douglas test, because defendants have proffered a legitimate reason for his termination – his poor job

performance – plaintiff must offer evidence of pretext to withstand summary judgment. The court concludes plaintiff has barely met this burden.   He has submitted evidence, though hotly disputed, that Covey was aware that some employees used racially derogatory terms after they had been sent to sensitivity training (though he was not aware they were using them in plaintiff's presence) and did not discipline them, that he was the only employee who was sent home for having a dirty uniform, that until at least February 2011 he was the only employee on whom Covey kept notes about job performance, that, while other non-black employees had damaged equipment, he was the only employee Covey terminated and that the accident with the Twin Max was not his fault.

Defendants essentially argue that, while other employees may have committed some of the same infractions as plaintiff, "Mosby was truly in a league of his own in his tardiness, persistent damage to equipment, persistent reports of inattention and sleeping on the job, and poor hygiene and cleanliness." Doc. #43, p. 24.  That may be but, according to plaintiff, that is not the reason he was given for his termination.[12]  He claims he was told that he was fired because he damaged the Twin Max and as mentioned earlier, there is evidence that other, non-black employees on the road crew were not discharged for damaging equipment.[13]

Considering in the aggregate the alleged post hoc rationalization for plaintiff's

---

[12]*Alone, the fact that defendants may have supplemented the grounds for plaintiffs' termination probably would not warrant an inference of pretext, particularly since all the reasons offered are amply supported by the evidence.*

[13]*Plaintiff's reliance on the fact that he was the only black employee, in the absence of evidence that any other black individual applied for a position with the county, is misplaced.*

termination with his other evidence of pretext, the court concludes plaintiff has created a fact question as to whether his discharge was due to his race. Therefore, defendants' motions will be denied as to plaintiff's discriminatory discharge claim.[14]  Plaintiff's racial discriminatory discharge claims asserted against Covey and the County under §1983 and against the County under Title VII will proceed to trial.

Retaliatory discharge

Under the McDonnell Douglas framework, a plaintiff asserting a retaliation claim must make a prima facie showing that (1) [he] was engaged in protected opposition to discrimination; (2) [he] was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." Luster v. Vilsack, 667 F.3d 1089, 1096 (10th Cir. 2011).  Defendant argues there is no evidence that plaintiff engaged in protected activity "that has any discernable connection (temporal or otherwise)" to his termination.  Doc. #43, p. 27.  The court agrees.

During his deposition plaintiff testified that he only complained once about his coworkers' racial slurs to Covey, soon after Covey became Commissioner.  Doc. #43-1, pp. 85-86, depo. pp. 156-157.  That was too far removed from plaintiff's termination to establish causation. While temporal proximity alone may give rise to an inference of retaliation, the adverse action must be " *very closely* connected in time to the protected activity."  Piercy v.

---

[14]*While defendant Covey sought qualified immunity with respect to plaintiff's hostile work environment claim, he did not seek it with respect to his discriminatory discharge claim.  However, even if he had asserted the defense, he would not have prevailed.*

Maketa, 480 F.3d 1192, 1198 (10th Cir. 2007) (internal quotations omitted)).

The court recognizes that before his deposition plaintiff gave a different answer when asked to "[i]dentify each and every complaint about racial discrimination or racial comments in the workplace that you submitted during the term of your employment." Doc. #58-18, p. 3. In responding to that interrogatory, plaintiff stated that

> around the beginning of 2012, Plaintiff made a verbal complaint [about racial comments in the workplace] to Defendant Covey while the two men were driving together. . . . Defendant Covey took no action to stop the comments as they continued until the time of Plaintiff's termination. Plaintiff again complained to Defendant Covey that he wanted the racial comments to stop. In response, Mr. Covey admonished Plaintiff for complaining, and the racial comments continued. Plaintiff continued to complain, his most recent complaint occurring in the days prior to his termination.

Doc. #58-18, p. 3. This evidence, if considered, would satisfy the first and third elements of plaintiff's prima facie case of retaliation. It conflicts, though, with plaintiff's deposition testimony. There, after being given the opportunity to describe "all the complaints [he'd] made to Mr. Covey about what was going on at work," plaintiff did not mention any complaints to Covey other than the one he made while riding with him when "he had just got in the office." Doc. #43-1, p. 106, depo. p. 265; p. 100, depo. p. 247.

The court concludes the conflict between plaintiff's answer to his interrogatory and his contradictory deposition testimony should be resolved by disregarding his interrogatory answer for two reasons. First, the record does not reflect that plaintiff's responses were sworn under oath or signed pursuant to 28 U.S.C. § 1746. *See* Doc #58-18. Second, in a similar situation the Tenth Circuit concluded a party could not create a fact question by

relying on an interrogatory response that contradicted his subsequent deposition testimony. In <u>Stearns v. McGuire,</u> 154 Fed.Appx. 70 (10th Cir. 2005) the Tenth Circuit stated: "As McGuire was deposed under oath, had the ability to recall whether he read the contract, and appeared to comprehend opposing counsel's inquiries into the matter, the prior contradictory interrogatory response cannot create an issue of fact." *Id*. at 76-77  Following <u>Stearns</u>, the court will disregard plaintiff's "prior contradictory interrogatory response."  Without it, plaintiff has no evidence of a causal connection between his protected conduct, which occurred at the latest in early 2010, and his termination in 2012.  Defendants are entitled to summary judgment on plaintiff's retaliatory discharge claim.

Hostile work environment

To survive summary judgment on a racially hostile work environment claim where the allegedly abusive conduct involved was committed by a coworker rather than a supervisor,[15] a plaintiff must produce evidence of a racially hostile environment and that the employer ""had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."  <u>Harsco Corp. v.. Renner</u>, 475 F.3d 1179, 1186 (10th Cir.2007).[16]  Defendants do not seriously challenge that the work

---

[15]*Plaintiff does not claim that he was harassed by a supervisor.*

[16]*Once a plaintiff has shown a racially hostile work environment exists, he "must identify one of three alternative bases for holding his ... employer liable under Title VII."* <u>*Harsco Corp. v. Renner,*</u> *475 F.3d 1179, 1186 (10th Cir. 2007).  "These are (1) where the acts are committed by an employee acting 'within the scope of [his or her] employment'; (2) where the employer was negligent or reckless; or (3) where the employee purported to act or to speak on behalf of the employer."* <u>*Rennard v. Woodworker's Supply, Inc.,*</u> *101 Fed.Appx. 296, 304 (10th Cir. 2004) (unpublished opinion) (quoting* <u>*Adler v. Wal-Mart Stores, Inc.,*</u> *144 F.3d 664, 673 (10th Cir.1998)).*

Case 5:12-cv-01166-HE   Document 85   Filed 09/19/13   Page 11 of 13

environment was racially hostile.  Rather, they assert that plaintiff has not shown that the Board of County Commissioners was "negligent or reckless in controlling work conditions." Doc. #42, p. 24.

While a close question, the court concludes plaintiff has created a genuine issue of fact as to whether the County "knew or should have known about the conduct and failed to stop it."  Bertsch v. Overstock.com, 684 F.3d 1023, 1027 (10th Cir. 2012) (internal quotations omitted).  There is evidence that, not long after Covey became Commissioner, both he and plaintiff were present when a coworker used the word "nigger" and that plaintiff complained to him about the alleged harassment.  While Covey sent the employees to sensitivity training, there is evidence that some employees continued to use racial slurs and did so in Covey's presence.  There also is evidence that a foreman was aware of the harassment.  The court recognizes that there is no evidence that plaintiff advised Covey of any harassment after their initial conversation, which took place shortly after Covey took office.[17]  However, while that may substantially weaken plaintiff's claim, it does not bar his hostile work environment claim against the County under Title VII.

Plaintiff's §1983 claims against Covey, individually, for a hostile work environment fail because there is no evidence of any racially harassing conduct on his part or that he was anything more than negligent in failing to discover the harassing conduct of plaintiff's coworkers.  Personal liability must be predicated on the individual's personal involvement

---

[17]*See supra pp. 9-10.*

11

in the claimed violation.  Henry v. Storey, 658 F.3d 1235, 1241 (10th Cir. 2011).  Without an underlying § 1983 claim against Covey, the County cannot be held liable for a racially hostile work environment based on § 1983.  *See* Camuglia v. City of Albuquerque, 448 F.3d 1214 , 1223 (10th Cir. 2006) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.") (quoting Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir.1993)).

One issue remains to be addressed – plaintiff's request for punitive damages against Covey, individually.  While the court will not grant defendant's motion on that issue at this time, it notes that plaintiff's evidence of "reckless or callous indifference to the federal protected rights of others'" Fuerschbach v. Sw. Airlines Co., 439 F.3d 1197, 1207 n.7 (10th Cir. 2006) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)), is thin and of "evil motive or intent" is nonexistent.

State law claims

Plaintiff concedes his hostile work environment claim is not actionable under state law and his retaliatory discharge claim fails on evidentiary grounds.   The same questions of material fact that preclude summary judgment on plaintiff's federal discriminatory discharge claims prevent summary judgment on plaintiff's claim for race discrimination under the Oklahoma Anti-Discrimination Act.

Accordingly, defendant Covey's motion for summary judgment [Doc. #43] is **GRANTED** with respect to plaintiff's retaliatory discharge and hostile work environment claims and **DENIED** with respect to his § 1983 discriminatory discharge claim and his

punitive damages claim.  The Board of County Commissioner's motion for summary judgment [Doc. #42] is **GRANTED** with respect to plaintiff's retaliatory discharge claim, **GRANTED** with respect to his §1983 hostile work environment claim and **DENIED** with respect to his claim for discriminatory discharge asserted under Title VII, § 1983, and the OADA and his Title VII hostile work environment claim.

Defendants filed a joint motion asking the court to strike a supplemental interrogatory response and deposition errata sheet filed by plaintiff.  As plaintiff did not rely on the supplementary materials when responding to defendants' summary judgment motions, defendants' motion [Doc. #41] is **DENIED** as being **MOOT**.

**IT IS SO ORDERED**.

Dated this 19th day of September, 2013.